**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

ALPS PROPERTY & CASUALTY
INSURANCE COMPANY, f/k/a Attorneys
Liability Protection Society, A Risk Retention
Group,

          Plaintiff,

v.

PHILIP R. FARTHING, Individually and as
Former Trustee of the Ivan Higgerson
Revocable Trust Agreement, the Ivan
Higgerson Marital Trust, the Ivan Higgerson
Family Trust, and the Irrevocable Life
Insurance Trust Agreement of Ivan Higgerson;
PHILIP R. FARTHING, P.C.; IVAN L.
HIGGERSON, Sr., Individually and as Co-
Executor of the Estate of Edith A. Higgerson;
SANDRA H. BUTT, Individually and as Co-
Executor of the Estate of Edith A. Higgerson;
IVAN L. HIGGERSON, Jr.; CHRISTIE L.
PAULEY; TARA L. GREIFE; LESLIE O.
ERICKSON; and ELIZABETH METTS
ALLEN, as Trustee of the Ivan Higgerson
Revocable Trust Agreement, the Ivan
Higgerson Marital Trust, the Ivan Higgerson
Family Trust, and the Irrevocable Life
Insurance Trust Agreement of Ivan Higgerson,

          Defendants.

Case No.

## COMPLAINT

    Plaintiff ALPS Property & Casualty Insurance Company, f/k/a Attorneys Liability

Protection Society, A Risk Retention Group ("ALPS"), pursuant to 28 U.S.C. §§ 2201(a)

and 2202 and Federal Rules of Civil Procedure 8(a) and 57, for its complaint against Defendants

Philip R. Farthing ("Farthing"), Philip R. Farthing, P.C. ("Farthing P.C." and collectively with

Farthing, "Farthing Defendants"), Ivan L. Higgerson, Sr. ("Higgerson Sr."), Sandra H. Butt

("Butt"), Ivan L. Higgerson, Jr. ("Higgerson Jr."), Christie L. Pauley ("Pauley"), Tara L. Greife ("Greife"), Leslie O. Erickson ("Erickson"), and Elizabeth Metts Allen ("Allen")[1], alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      ALPS is an insurance company and corporation organized under the laws of the State of Montana with its principal place of business in the State of Montana.

2.      Farthing is an attorney licensed in the Commonwealth of Virginia and, upon information and belief, a resident of the Commonwealth of Virginia. Farthing is the former trustee of the Ivan Higgerson Revocable Trust Agreement ("Revocable Trust"), the Ivan Higgerson Marital Trust ("Marital Trust"), the Ivan Higgerson Family Trust ("Family Trust"), and the Irrevocable Life Insurance Trust Agreement of Ivan Higgerson ("Irrevocable Life Insurance Trust").[2]

3.      Farthing P.C. is a professional corporation organized on November 29, 2004 under the laws of the Commonwealth of Virginia with its principal place of business in Norfolk, Virginia. Farthing is, upon information and belief, the sole member of Farthing P.C.

4.      Higgerson Sr. is, upon information and belief, the son of Ivan and Edith Higgerson ("Mrs. Higgerson") and a beneficiary of the Family Trust and the Irrevocable Life Insurance Trust. Higgerson Sr. is the co-executor of the Estate of Edith A. Higgerson ("Edith Higgerson Estate") and, upon information and belief, a resident of the Commonwealth of Virginia.

---

[1]  ALPS will refer to Higgerson Sr., Butt, Higgerson Jr., Pauley, Greife, Erickson, and Allen collectively as "Higgerson Defendants". ALPS will refer to the Farthing Defendants and the Higgerson Defendants collectively as "Defendants".

[2]  ALPS will refer to the Revocable Trust, Marital Trust, Family Trust, and Irrevocable Life Insurance Trust collectively as "Higgerson Trusts".

5.      Butt is, upon information and belief, the daughter of Ivan and Mrs. Higgerson and a beneficiary of the Family Trust and the Irrevocable Life Insurance Trust.  Butt is the co-executor of the Edith Higgerson Estate and, upon information and belief, a resident of the Commonwealth of Virginia.

6.      Higgerson Jr. is, upon information and belief, a grandchild of Ivan and Mrs. Higgerson, a beneficiary of the Family Trust and the Irrevocable Life Insurance Trust, and a resident of the Commonwealth of Virginia.

7.      Pauley is, upon information and belief, a grandchild of Ivan and Mrs. Higgerson, a beneficiary of the Family Trust and the Irrevocable Life Insurance Trust, and a resident of the State of North Carolina.

8.      Greife is, upon information and belief, a grandchild of Ivan and Mrs. Higgerson, a beneficiary of the Family Trust and the Irrevocable Life Insurance Trust, and a resident of the State of North Carolina.

9.      Erickson is, upon information and belief, a grandchild of Ivan and Mrs. Higgerson, a beneficiary of the Family Trust and the Irrevocable Life Insurance Trust, and a resident of the State of North Carolina.

10.     Allen is an attorney licensed and practicing in the Commonwealth of Virginia, with her principal place of business in Chesapeake, Virginia.  Allen is, upon information and belief, the current trustee of the Higgerson Trusts.

11.     The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between ALPS and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims for relief occurred in this district.

## GENERAL ALLEGATIONS

### I.  The Underlying Suit

13.     On December 2, 2014, Mrs. Higgerson filed a complaint ("Complaint") against the Farthing Defendants in the Circuit Court of the City of Chesapeake, Virginia. (December 2, 2014 Complaint, *Higgerson v. Farthing, et al.*, Case No. CL14-2929 (Cir. Ct. City of Chesapeake, Va.) ("Underlying Suit").  A true and correct copy of the Complaint in the Underlying Suit is attached as Exhibit A.).

14.     Farthing was serving as trustee of the Higgerson Trusts at the time Mrs. Higgerson filed the Complaint.  (Exhibit A ¶ 3).

15.     The Complaint alleged Ivan Higgerson, who died in 1999, established two trusts before his death—the Revocable Trust and the Irrevocable Life Insurance Trust.  (Exhibit A ¶¶ 1-2).  Upon Ivan Higgerson's death, the trust corpus of the Revocable Trust was to be diverted into two other trusts, the Martial Trust and the Family Trust.  (*Id*. ¶ 2).

16.     Mrs. Higgerson alleged she was a beneficiary of all the Higgerson Trusts. (Exhibit A ¶¶ 2-6, 16, 19).

17.     An election was made after Ivan Higgerson's death to qualify the assets of the Marital Trust for the federal estate tax marital deduction.  (Exhibit A ¶ 4).

18.     The Complaint further alleged the terms of the Marital Trust provided its net income was to be paid on a quarterly basis to Mrs. Higgerson for life.  (Exhibit A ¶ 5).  Farthing, as trustee, was charged with insuring the income Mrs. Higgerson received from the Marital Trust

was sufficient to meet her needs and to provide her with reasonable support, care, health, and maintenance. (*Id*.).

19. Mrs. Higgerson alleged the Family Trust was created to provide her, her children, and her grandchildren with financial assistance. (Exhibit A ¶ 6).

20. By correspondence to Mrs. Higgerson dated May 20, 2010, Farthing (a) advised Mrs. Higgerson the Revocable Trust had lost 52% of its value "due to poor market conditions created by the Great Recession of 2008", and (b) requested, allegedly in violation of the terms of the Higgerson Trusts and federal law, that Mrs. Higgerson agree to cease her distributions from the Revocable Trust until the trust corpus could be rehabilitated. (Exhibit A ¶ 7 & Exhibit A).

21. The Complaint alleged Mrs. Higgerson was unaware at the time of Farthing's May 20, 2010 correspondence that "Farthing had been paying himself and his law firm inordinate amounts of Trustee fees." (Exhibit A ¶ 8).

22. The Complaint alleged the following examples, among others, of "inordinate" and "excessive" fees collected by the Farthing Defendants with respect to the Higgerson Trusts: (a) $8,150.35 from the Irrevocable Life Insurance Trust in 2009; (b) $2,814.98 from the Family Trust in 2009; and (c) $99,155.84 from the Marital Trust in 2009. (Exhibit A ¶ 8).

23. The Complaint further alleged the Farthing Defendants had "paid themselves at least $1,036,272 in fees" relating to trustee services for the Higgerson Trusts through the end of 2013. (Exhibit A ¶ 8).

24. Mrs. Higgerson alleged Farthing (a) "engaged in an extraordinary amount of stock trading[,]" which caused excess brokerage fees to be charged to the Higgerson Trusts in addition to trustee fees, (b) improperly charged the Higgerson Trusts for legal work he performed for Ivan Higgerson's corporation, (c) failed to complete an accurate accounting for the Higgerson Trusts,

and (d) improperly reduced the distributions from the Marital Trust to Mrs. Higgerson. (Exhibit A ¶¶ 10-12).

25. The Complaint alleged five causes of action against the Farthing Defendants: (a) Count I alleged the Farthing Defendants breached their fiduciary duties to Mrs. Higgerson; (b) Count II alleged conversion against the Farthing Defendants with respect to over $1 million in excessive fees improperly charged to the Higgerson Trusts; (c) Count III requested termination of the Marital Trust; (d) Count IV requested removal of Farthing as trustee of the Higgerson Trusts and appointment of a replacement trustee; and (e) Count V sought injunctive relief prohibiting the Farthing Defendants from taking any further actions with respect to the Higgerson Trusts and ordering immediate distribution of the remaining assets of the Marital Trust to Mrs. Higgerson. (Exhibit A ¶¶ 13-33 & Prayer for Relief).

26. In the Complaint, Mrs. Higgerson requested monetary relief in the amount of $878,697.16 for the Farthing Defendants' breaches of fiduciary duties (Count I) and conversion (Count II). (Exhibit A, Prayer for Relief).

27. Farthing notified ALPS of the Underlying Suit in December 2014, after the Complaint was filed.

28. By correspondence dated December 29, 2014, ALPS agreed to provide a defense to the Farthing Defendants against the Underlying Suit, subject to a reservation of rights, under Lawyers Professional Liability Insurance Policy No. ALPS11583-9 issued by ALPS to Farthing P.C. for the period December 1, 2014 to December 1, 2015 ("Policy"). A true and correct copy of the Policy is attached as Exhibit B.

29.     ALPS has been defending the Farthing Defendants against the Underlying Suit under the Policy subject to a complete reservation of ALPS's rights to deny coverage and reimbursement of defense costs.

30.     By order dated May 6, 2015, the court in the Underlying Suit removed Farthing as trustee of the Higgerson Trusts and designated Allen as trustee of the Higgerson Trusts. (March 24, 2016 Amended Complaint ("Amended Complaint"), Underlying Suit, ¶ 6.  A true and correct copy of the Higgerson Defendants' Amended Complaint is attached as Exhibit C.).

31.     On February 2, 2016, Edith Higgerson died.  (Exhibit C ¶ 6).

32.     On March 3, 2016, Higgerson Sr. and Butt were duly qualified as co-executors of the Edith Higgerson Estate.  (Exhibit C ¶ 7).

33.     The Higgerson Defendants alleged Higgerson Sr. and Butt, as the children of Ivan and Mrs. Higgerson, became beneficiaries of the Family Trust and the Irrevocable Life Insurance Trust upon the death of Ivan Higgerson.  (Exhibit C ¶ 3).

34.     Upon the death of Mrs. Higgerson, the proceeds from the Marital Trust allegedly passed to Butt, Higgerson Jr., Pauley, Greife, and Erickson by virtue of Mrs. Higgerson's will. (Exhibit C ¶ 5).

35.     On March 24, 2016, the Higgerson Defendants filed their Amended Complaint in the Underlying Suit.

36.     The Higgerson Defendants removed Counts III, IV, and V of the Complaint from the Amended Complaint.  Count III sought termination of the Marital Trust, relief which became moot upon Mrs. Higgerson's death; Count IV sought removal of Farthing as trustee of the Higgerson Trusts and appointment of a successor trustee, which the court in the Underlying Suit ordered on May 6, 2015; and, Count V sought injunctive relief prohibiting the Farthing

Defendants from taking any further actions with respect to the Higgerson Trusts, relief which became moot upon Farthing's removal as trustee of the Higgerson Trusts. (Exhibit A ¶¶ 18-33 & Prayer for Relief; Exhibit C ¶¶ 8-9).

37. The Higgerson Defendants continued to allege breaches of fiduciary duties (Count I), conversion (Count II), and unjust enrichment (Count III) against the Farthing Defendants in the Amended Complaint. (Exhibit C).

38. In Count I of the Amended Complaint, the Higgerson Defendants alleged the Farthing Defendants breached their fiduciary duties to the Higgerson Defendants by: (a) "charging exorbitant fees[3], engaging in excessive trading, failing to provide accurate accountings, and failing to provide appropriate distributions to Mrs. Higgerson"; (b) "failing to properly file state and federal tax returns" for the Higgerson Trusts in 2010 and 2011, including filing returns that "improperly passed through passive losses from the [Marital] [T]rust to Mrs. Higgerson[,] . . . which expired at her death and . . . damaged the [Marital] [T]rust approximately $775,000"; (c) "engaging in numerous wash sales of securities that wasted $1,686,596 in losses, resulting in an increased tax liability of $421,650"; (d) "failing to invest in a reasonably prudent manner" and instead engaging "in a high frequency trading strategy utilizing margin debt that was not authorized by the [Higgerson] Trusts and unreasonably caused significant losses of approximately $1,300,000"; and (e) "refusing to follow the terms of the Marital Trust which required the timely delivery of the assets to Mrs. Higgerson after she demanded delivery on July 18, 2014." (Exhibit C ¶¶ 20-24).

---

[3]  The Amended Complaint alleged the Farthing Defendants had paid themselves "at least $1,072,993.48 in fees" associated with the Higgerson Trusts through the end of 2014. (Exhibit C ¶14). The Higgerson Defendants further alleged guidelines published under the authority of the Virginia Supreme Court for Commissioner of Accounts indicated "reasonable trustee fees for [t]rusts comparable to the ones at issue [in the Underlying Suit] would be merely $231,256 over the same period of time." (*Id.* ¶ 15).

39.     In Count II of the Amended Complaint, for conversion, the Higgerson Defendants alleged the Farthing Defendants "defalcated approximately $850,000 in excessive fees which is grossly out of proportion to the income of the [Higgerson] [T]rusts and work performed for the [Higgerson] Trusts."  (Exhibit C ¶ 26).

40.     The Higgerson Defendants further alleged the Farthing Defendants (a) "wrongfully exercised control over funds rightfully belonging to the [Higgerson] [T]rust[s] or the beneficiaries, depriving them of their use and enjoyment, which was their intended purpose", and (b) "improperly converted the funds of the [Higgerson] Trust[s] intended for the beneficiaries."  (Exhibit C ¶ 27).

41.     In Count III of the Amended Complaint, the Higgerson Defendants alleged unjust enrichment against the Farthing Defendants based on the Farthing Defendants' "wrongful possession of the excessive fees charged" the Higgerson Trusts and the Farthing Defendants' acceptance and retention "of the excess fees that rightfully belong to the [Higgerson] [T]rusts, and ultimately, to [the Higgerson Defendants]."  (Exhibit C ¶¶ 29-30).

42.     In the Amended Complaint, the Higgerson Defendants sought monetary relief in the amount of $3,329,691.00 and attorney's fees.  (Exhibit C, Prayer for Relief).

43.     On April 13, 2016, the Farthing Defendants filed their answer ("Answer to Amended Complaint") to the Amended Complaint.  A true and correct copy of the April 13, 2016 Answer to Amended Complaint is attached as Exhibit D.

44.     A bench trial in the Underlying Suit occurred on November 7 and 8, 2016.

## II. June 20, 2017 Letter Opinion and Final Judgment

45.     In a letter opinion dated June 20, 2017 ("June 20, 2017 Letter Opinion"), the court in the Underlying Suit found the Farthing Defendants liable for "breach of the prudent investor

rule in the amount of $1,382,653.00, and excessive fees in the amount of $770,471.33, as well as interest calculated from the last date [Farthing] performed duties as a fiduciary for the [Higgerson] [T]rusts[.]"  A true and correct copy of the June 20, 2017 Letter Opinion in the Underlying Suit is attached as Exhibit E.

46.    In the June 20, 2017 Letter Opinion, the court determined Farthing breached his fiduciary duties to act as a prudent investor for the Higgerson Defendants by, *inter alia*: (a) placing 100% of the stock assets for the Higgerson Trusts "at risk" through a strategy of "persistent margin and day trading"; (b) failing to be "truthful when [Farthing] advised Charles Schwab on their written form as authorization that he had 'specific authority' to trade on margin"; and (c) "failing to reflect in the accountings [of the Higgerson Trusts] that [Farthing] was day trading, per Schwab, that he traded on margin and incurred debt for the estate by such trading, or that he made over 2,500 trades during the calendar year 2013[.]"  (Exhibit E at 6-7).

47.    The June 20, 2017 Letter Opinion described Farthing's improper conduct as follows:

> This was not a case of a specific circumstance or requirement of the trust that forced [Farthing] to take certain steps in order to satisfy express mandates; it is simply a matter of [Farthing] betting someone else's funds by day trading and buying stock on margin in order to generate returns to support the $1,057,000 in fees he removed from the trusts.  Compounding those errors, [Farthing] failed to apprise the beneficiary that he was trading stock on margin and incurring debt by trading on margin.  Nor did he ever advise her of the method of calculating his fees or his rate of pay, a clear violation of [Virginia fiduciary law].

(Exhibit E at 8-9).

48.    The court determined Farthing's "unauthorized day trading and purchases of stock on margin were reckless, contrary to the prudent investor rule, and constituted breaches of his fiduciary duties[.]"  (Exhibit E at 9).  As compensation for Farthing's breaches of fiduciary

duties and damages incurred by the Higgerson Trusts, the court awarded the Higgerson Defendants $1,382,653.00.  (*Id.*).

49.    In the June 20, 2017 Letter Opinion, the court further determined the Farthing Defendants charged the Higgerson Defendants excessive fees related to administration of the Higgerson Trusts, fees that were based on "an undisclosed blended method of charging and an undisclosed rate of pay . . . in violation of [Virginia law]."  (Exhibit E at 13).

50.    The court in the Underlying Suit determined "the appropriate fee for [Farthing's] services amounts to $286,746.10, which fairly compensates the fiduciary for his one-sided efforts in handling the [Higgerson] [T]rusts[.]"  (Exhibit E at 14).  Because Farthing collected $1,057,193.48 in fees from the Higgerson Trusts, the court determined the Farthing Defendants collected $770,471.33 in unreasonable and excessive fees.  (*Id.*).

51.    As compensation for the amount of excessive fees collected by the Farthing Defendants, the June 20, 2017 Letter Opinion awarded $770,471.33 to the Higgerson Defendants.  (Exhibit E at 14).

52.    The court did not award additional damages to the Higgerson Defendants for conversion or unjust enrichment.  (Exhibit E at 14-15).

53.    The court noted the following with respect to the conversion allegations: "[t]o the extent [Farthing] converted the funds of the [Higgerson Defendants], any recovery for this tort overlaps the above-detailed breaches [of fiduciary duties], and the [Higgerson Defendants] [are] entitled to no additional damages."  (Exhibit E at 14-15).

54.    By order dated July 7, 2017, the court in the Underlying Suit awarded the Higgerson Defendants $101,062.50 for their attorney's fees, costs, and expenses related to the Underlying Suit.

55.     By order dated July 14, 2017, the court in the Underlying Suit entered a final judgment against the Farthing Defendants and in favor of the Higgerson Defendants for the reasons described in the June 20, 2017 Letter Opinion.

56.     On July 18, 2017, the Farthing Defendants filed a notice of appeal to the Virginia Supreme Court with respect to the final judgment entered in the Underlying Suit.

57.     By order dated July 20, 2017 ("July 20, 2017 Amended Final Judgment"), the court in the Underlying Suit entered an amended final judgment[4] against the Farthing Defendants and in favor of the Higgerson Defendants.   A true and correct copy of the July 20, 2017 Amended Final Judgment is attached as Exhibit F.

58.     In the July 20, 2017 Amended Final Judgment, the court (a) entered a final judgment against the Farthing Defendants, jointly and severally, (b) awarded the Higgerson Defendants $2,153,124.33, with interest at a rate of 6% from May 6, 2015, and (c) made final the $101,062.50 award of attorney's fees to the Higgerson Defendants.  (Exhibit F at 1-2).

### III.  The Policy

59.     ALPS issued the Policy to Farthing P.C. for the period December 1, 2014 to December 1, 2015.

60.     Farthing is listed as an insured attorney under the Policy.    (Exhibit B, Declarations Item 2).

61.     The Policy provides legal professional liability insurance on a claims made and reported basis.  (Exhibit B, Insuring Agreements § 1.1).

62.     The Policy's insuring agreement states, in relevant part:

Subject to the limit of liability, exclusions, conditions and other terms of this policy, the Company agrees to pay on behalf of the Insured all sums (in excess of

---

[4]  The July 20, 2017 Amended Final Judgment corrected a minor typographical error in the July 14, 2017 final judgment.

the deductible amount) that the Insured becomes legally obligated to pay as damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that:

1.1.1   the claim arises from an act, error, omission or personal injury that happened on or after the loss inclusion date and the retroactive coverage date set forth in Items 2 and 3 of the Declarations, and that the claim arises from or is in connection with:

> (a)   an act, error or omission in professional services that were or should have been rendered by the Insured, or

> (b)   a personal injury arising out of the professional services of the Insured;

1.1.2   at the effective date of this policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or personal injury might be the basis of a claim[.]

* * *

1.2.1 . . . The Company shall not have a duty to defend or to pay such expenses as to any claim not covered under this policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered claim, including any amount paid in defending a non-covered claim that is asserted together with one or more covered claims.

(Exhibit B, Insuring Agreements §§ 1.1-1.2.1).

63.   "Professional services" are defined in the Policy as:

2.24.1   services or activities performed solely for others as an attorney in an attorney-client relationship on behalf of one or more clients applying the attorney's specialized education, knowledge, skill, labor, experience and/or training;

2.24.2   services as mediator, arbitrator, or other facilitator in a dispute resolution process;

2.24.3   services as administrator, conservator, guardian, executor, personal representative or trustee, so long as the Insured (a) is not a beneficiary of such estate or trust, and (b) is not receiving compensation other than fees for such services paid directly from such estate or trust; or

2.24.4   services as an attorney in researching or certifying title to real estate, but excluding services as a title insurance agent acting on behalf of a title

insurance company, unless such services are specifically included under this *policy* by a separate endorsement identified in Item 7 of the Declarations. "services or activities performed solely for others as an attorney in an attorney-client relationship on behalf of one or more clients."

(Exhibit B, Definitions § 2.24).

64.    The Policy specifically excludes from the definition of "professional services" the following:  "the rendering of investment advice in any context to any person including, but not limited to, advice concerning securities, real property, commodities, future contracts or franchises[.]"  (Exhibit B, Definitions § 2.24).

65.    "Damages" is defined in the Policy as "any monetary award by way of judgment or final arbitration, or any settlement"; the Policy specifically excludes from the definition of "damages":

2.6.1    punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations . . . [;]

2.6.2    awards deemed uninsurable by law;

2.6.3    injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

2.6.4    restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; or

2.6.5    any injury or damage to, destruction of, loss of, or loss of use of any funds or property.

(Exhibit B, Definitions § 2.6).

66.    The Policy does not apply to any claim "arising from or in connection with . . . [a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful

act, error or omission committed by, at the direction of, or with the consent of an Insured, or any personal injury arising from such conduct[.]"  (Exhibit B, Exclusions § 3.1.1).

67.     The Policy does not apply to any claim "arising from or in connection with . . . [a]ny conversion, misappropriation, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person held or controlled by an Insured in any capacity or under any authority, including any loss or reduction in value of such funds or property[.]"  (Exhibit B, Exclusions § 3.1.8).

68.     The Policy does not apply to any claim "arising from or in connection with . . . [a]ny dispute over fees or costs, or any claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held by an Insured."  (Exhibit B, Exclusions § 3.1.9).

### IV.  ALPS's Coverage Position

69.     On December 2, 2014, Mrs. Higgerson filed the Complaint in the Underlying Suit.  (Exhibit A).

70.     By correspondence dated December 29, 2014, ALPS accepted Farthing's tender of the defense of the Underlying Suit under the Policy subject to a complete reservation of ALPS's rights to deny coverage and reimbursement of defense costs.

71.     On March 24, 2016, the Higgerson Defendants filed the Amended Complaint in the Underlying Suit.  (Exhibit C).

72.     By correspondence to Farthing dated October 4, 2016, ALPS (a) supplemented its December 29, 2014 correspondence describing ALPS's coverage position regarding the Underlying Suit, and (b) notified Farthing that ALPS would continue to provide him with a

defense against the Underlying Suit subject to a complete reservation of ALPS's rights to deny coverage and reimbursement of defense costs.

73.     By order dated July 14, 2017, the court in the Underlying Suit entered a final judgment against the Farthing Defendants and in favor of the Higgerson Defendants for the reasons described in the June 20, 2017 Letter Opinion.  (Exhibit F).

74.     By correspondence dated July 19, 2017, the Higgerson Defendants demanded the Policy's limit of liability from ALPS.

## FIRST CAUSE OF ACTION

### (For a Declaration the Policy Does Not Afford Coverage to the Farthing Defendants for the Underlying Suit)

75.     ALPS incorporates and realleges paragraphs 1 through 74 as if fully set forth herein.

76.     The Policy does not afford coverage for the Underlying Suit to the extent the relief awarded in the Underlying Suit does not constitute "Damages" as defined in the Policy. (Exhibit B, Insuring Agreements § 1.1 & Definitions § 2.6).

77.     The Policy specifically excludes from the definition of damages "restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured."  (Exhibit B, Definitions § 2.6.4).

78.     In the June 20, 2017 Letter Opinion, the court awarded the Higgerson Defendants the following relief:  (a) $770,471.33 as compensation for the amount of excessive fees charged by and paid to the Farthing Defendants; and (b) $1,382,653.00 as compensation for the funds lost

by the Higgerson Trusts as a result of Farthing's unreasonable and imprudent investment of such funds, which Farthing controlled as trustee of the Higgerson Trusts. (Exhibit E at 7-9, 14).

79. The $770,471.33 awarded to the Higgerson Defendants in the Underlying Suit is outside the coverage afforded by the Policy because the amount constitutes "restitution, reduction, disgorgement or set-off" of the fees charged by and paid to the Farthing Defendants for Farthing's legal services. (Exhibit E at 14).

80. The $1,382,653.00 awarded to the Higgerson Defendants in the Underlying Suit is outside the coverage afforded by the Policy because the amount constitutes "restitution" or "reduction" with respect to funds or property of the Higgerson Defendants "held or in any manner directly or indirectly controlled by" the Farthing Defendants. (Exhibit E at 1, 6-9).

81. The Policy specifically excludes from the definition of damages "punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations[.]" (Exhibit B, Definitions §§ 2.6.1-2.6.2).

82. In the June 20, 2017 Letter Opinion, the court noted Virginia law allows for an award of costs, expenses, and reasonable attorney's fees to the prevailing party in a "judicial proceeding involving the administration of a trust, . . . as justice and equity may require"; and, in the July 20, 2017 Amended Final Judgment, the court awarded the Higgerson Defendants $101,062.50 in attorney's fees, costs, and expenses. (Exhibit E at 15; Exhibit F at 1-2).

83. The $101,062.50 award of attorney's fees to the Higgerson Defendants in the Underlying Suit is outside the coverage afforded by the Policy because it constitutes "punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations[,]" and was awarded solely with respect to and as a consequence of the award of damages outside the Policy's coverage. (Exhibit E at 15; Exhibit F at 1-2).

84.     The Policy specifically excludes from the definition of damages any "loss of, or loss of use of any funds or property."  (Exhibit B, Definitions § 2.6.5).

85.     In the June 20, 2017 Letter Opinion, the court determined Farthing's "rampant day trading" and "pledging of 100% of the trust assets . . . to purchase stock on the margin was not reasonable, resulting in the precipitous drop in the value of the trust[,]" and ultimately concluded the Higgerson Trusts incurred $1,382,653.00 in losses "as a result of [Farthing's] day and margin trading[.]"  (Exhibit E at 7-8).

86.     The $1,382,653.00 awarded to the Higgerson Defendants in the Underlying Suit is outside the coverage afforded by the Policy because the amount constitutes compensation for funds lost, or the loss of use of funds, by the Higgerson Trusts.  (Exhibit E at 7-9).

87.     The Policy specifically excludes from the definition of damages "injunctive, declaratory, or other equitable relief", including the costs or fees incident thereto.  (Exhibit B, Definitions §§ 2.6.1 and 2.6.3).

88.     In the Complaint, the Higgerson Defendants sought injunctive and equitable relief relating to the Marital Trust and Farthing's removal as trustee for the Higgerson Trusts, relief which the court ordered on May 6, 2015 and which is outside the coverage afforded by the Policy.  (Exhibit A ¶¶ 18-33 & Prayer for Relief; Exhibit C ¶ 9).

89.     Coverage under the Policy is limited to claims arising from or in connection with "an act, error or omission in professional services that were or should have been rendered by the Insured[.]"  (Exhibit B, Insuring Agreements § 1.1.1).

90.     The Policy specifically excludes from the definition of "professional services" the following:  "the rendering of investment advice in any context to any person including, but not

limited to, advice concerning securities, real property, commodities, future contracts or franchises[.]" (Exhibit B, Definitions § 2.24).

91.     The Underlying Suit is outside the coverage afforded by the Policy because it arose out of Farthing's investment activity on behalf of the Higgerson Trusts—including, but not limited to, Farthing's "reckless" and "rampant day trading and his pledging of 100% of the [Higgerson] [T]rust assets . . . to purchase stock on the margin"—activities which do not constitute "professional services" under the Policy.  (*See* Exhibit E at 8-9).

92.     The Policy does not afford coverage for the Underlying Suit to the extent any exclusions in the Policy apply to exclude coverage.  (Exhibit B, Exclusions § 3).

93.     The Policy specifically excludes coverage for any claim "arising from or in connection with . . . [a]ny dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an Insured, or any personal injury arising from such conduct[.]"  (Exhibit B, Exclusions § 3.1.1).

94.     In the June 20, 2017 Letter Opinion, the court determined Farthing breached his fiduciary duties to act as a prudent investor for the Higgerson Defendants by committing the following intentionally wrongful or dishonest acts, *inter alia*:  (a) placing 100% of the stock assets for the Higgerson Trusts "at risk" through a strategy of "persistent margin and day trading"; (b) failing to be "truthful when [Farthing] advised Charles Schwab on their written form as authorization that he had 'specific authority' to trade on margin"; (c) "failing to reflect in the accountings [of the Higgerson Trusts] that [Farthing] was day trading, per Schwab, that he traded on margin and incurred debt for the estate by such trading, or that he made over 2,500 trades during the calendar year 2013"; (d) "betting someone else's funds by day trading and buying stock on margin in order to generate returns to support the $1,057,000 in fees [Farthing]

removed from the [Higgerson] [T]rusts"; (e) failing to "advise [Mrs. Higgerson] of the method of calculating his fees or his rate of pay, a clear violation of [Virginia fiduciary law]"; (f) failing to administer the Higgerson Trusts "solely to the interests of the beneficiaries"; and (g) charging and collecting $770,471.33 in excessive fees from the Higgerson Defendants.   (Exhibit E at 6-7, 8-9, 14).

95.     The Underlying Suit is outside the coverage afforded by the Policy because it arose from or in connection with dishonest, fraudulent, and intentionally wrongful or harmful acts committed by the Farthing Defendants.  (Exhibit E at 6-7, 8-9, 14).

96.     The Policy specifically excludes coverage for "any claim arising from or in connection with . . . [a]ny conversion, misappropriation, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person held or controlled by an Insured in any capacity or under any authority, including any loss or reduction in value of such funds or property[.]"  (Exhibit B, Exclusions § 3.1.8).

97.     The Underlying Suit is outside the coverage afforded by the Policy because it arose out of the Farthing Defendants' conversion, misappropriation, or negligent supervision of the Higgerson Defendants' trust funds or property, including, but not limited to, the following improper conduct:  (a) violating Virginia's "prudent investor rule" by "acting as a day trader" and "buying stock on margin"; (b) placing 100% of the stock assets for the Higgerson Trusts "at risk" through a "reckless" strategy of "rampant" and "persistent margin and day trading"; (c) "betting [the Higgerson Trusts'] funds by day trading and buying stock on margin in order to generate returns to support the $1,057,000 in fees [Farthing] removed from the [Higgerson] [T]rusts"; (d) failing to administer the Higgerson Trusts "solely to the interests of the

beneficiaries"; and (e) charging and collecting $770,471.33 in excessive fees from the Higgerson Defendants.   (Exhibit E at 5-7, 8-9, 14).

98.    The Policy specifically excludes coverage for "any claim arising from or in connection with . . . [a]ny dispute over fees or costs, or any claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held by an Insured."  (Exhibit B, Exclusions § 3.1.9).

99.    The Underlying Suit is outside the coverage afforded by the Policy because (a) it arose from or in connection with a dispute over "inordinate" and "excessive fees" charged by the Farthing Defendants, and (b) the Higgerson Defendants sought and were awarded the return, reimbursement, or disgorgement of fees, costs, and funds held by the Farthing Defendants. (Exhibit C ¶¶ 14-15, 20-23, 26-27, 29-31 & Prayer for Relief; Exhibit E at 7-9, 14-15).

100.    An actual controversy exists between ALPS and Defendants regarding whether the Policy affords coverage for the Underlying Suit.

101.    Because the Underlying Suit is outside the coverage afforded by the Policy, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Policy does not afford coverage for the Underlying Suit and ALPS has no duty to defend or indemnify the Farthing Defendants with respect to the Underlying Suit.

### SECOND CAUSE OF ACTION

### (Reimbursement of Defense Expenses)

102.    ALPS incorporates and realleges paragraphs 1 through 101 as if fully set forth herein.

103.    The Policy states ALPS has no duty to defend or pay defense expenses for "any claim not covered" and has "the right to seek reimbursement from any Insured, who shall

promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered claim, including any amount paid in defending a non-covered claim that is asserted together with one or more covered claims." (Exhibit B, Insuring Agreements § 1.2.1).

104.    ALPS accepted Farthing's tender of defense under the Policy subject to a complete reservation of rights, including the right to seek recovery from Farthing, Farthing P.C., or any insured under the Policy, all amounts paid in defense of non-covered aspects of the Underlying Suit.

105.    ALPS has been defending the Farthing Defendants in the Underlying Suit.

106.    For the reasons described above in Paragraphs 75 through 101, the Underlying Suit is outside the coverage afforded by the Policy.

107.    ALPS is entitled to judgment in its favor for the amount of attorneys' fees and costs paid to defend the Farthing Defendants against the Underlying Suit because the Underlying Suit is not covered under the Policy.

WHEREFORE, ALPS prays that judgment be entered in its favor and against Defendants as follows:

1.    Declaring the Policy does not afford coverage to the Farthing Defendants for the Underlying Suit;

2.    Declaring ALPS has no duty to defend or indemnify the Farthing Defendants under the Policy with respect to the Underlying Suit;

3.    Awarding damages in the amount of the attorneys' fees and costs paid to defend the Farthing Defendants against the Underlying Suit; and

4.    Awarding ALPS such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.

Dated:  July 25, 2017                    /s/ Timothy S. Baird
Richmond, Virginia                       Timothy S. Baird (VSB 36315)
                                         Jeremy S. Williams (VSB 77469)
                                         **KUTAK ROCK LLP**
                                         Bank of America Center
                                         901 East Byrd Street, Suite 1000
                                         Richmond, Virginia 23219-4071
                                         Telephone: (804) 644-1700
                                         Facsimile: (804) 783-6192
                                         tim.baird@kutakrock.com
                                         jeremy.williams@kutakrock.com

                                         *Counsel for Plaintiff ALPS Property & Casualty*
                                         *Insurance Company f/k/a Attorneys Liability*
                                         *Protection Society, A Risk Retention Group*